# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1110 | **DATE** | 11/20/2001 |
| **CASE TITLE** | CENTAGON INC et al vs. BOARD OF DIRECTORS OF 1212 LAKE SHORE DRIVE CONDOMINIUM ASSN. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendants' motion for summary judgment is granted. This case is dismissed with prejudice in its entirety. All pending motions are moot. All previously scheduled dates are stricken.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 2 1 2001 date docketed | 51 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | Cm docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 11/20/2001 date mailed notice | |
| | JS courtroom deputy's initials | 01 NOV 21 AM 6:34 | JS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
NOV 2 1 2001

| | |
|---|---|
| CENTAGON, INC., PENDERYN, LTD., VALERIE CAMPBELL and JEANNE MARIE DANA, <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF DIRECTORS OF 1212 LAKE SHORE DRIVE CONDOMINIUM ASSOCIATION, 1212 LAKE SHORE CONDOMINIUM ASSOCIATION, JUDY HARRIS, SCOTT HERKERT, and INVSCO MANAGEMENT COMPANY, INC., <br><br> Defendants. | No. 00 C 1110 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On February 24, 2000, plaintiffs Centagon, Inc. ("Centagon"), Penderyn, Ltd. ("Penderyn"), Valerie Campbell ("Campbell"), and Jeanne Marie Dana ("Dana") filed an eight-count complaint against the Board of Directors of 1212 Lake Shore Drive Condominium Association ("Board"), 1212 Lake Shore Drive Condominium Association[1] ("Association"), Judy Harris ("Harris"), Scott Herkert ("Herket"), and Invsco Management Company, Inc. ("Invsco") asking damages for personal property, owned by one or more of plaintiffs, which was removed during the course of the February 25, 1998, eviction of condominium unit 34B-S, located at 1212 Lake Shore Drive, Chicago, Illinois

---

[1] The Association is an Illinois not-for-profit corporation and is the governing body for all the owners of the 1212 Lake Shore Drive Condominiums.

1

("Unit"). On September 10, 2001, defendants filed this motion for summary judgment. Having considered all of the evidence in the record, defendants' motion for summary judgment is GRANTED. This case is dismissed in its entirety with prejudice.

PROCEDURAL BACKGROUND

Plaintiffs filed an eight-count Complaint seeking damages for the loss of personal property owned by either Centagon[2], Penderyn[3], Campbell, or Dana. Count I on behalf of Centagon, Count II on behalf of Penderyn, Count III on behalf of Campbell, Count IV on behalf of Dana each claim that defendants caused damage to their personal property when defendants breached their affirmative duty to safeguard personal property removed from the Unit during the eviction of the Unit on February 25, 1998. Count V on behalf of Campbell states a claim for breach of contract between Campbell, the Association, and the Board. Count VI on behalf of all the plaintiffs states a claim for breach of duty under a theory of bailment. Count VII on behalf of all plaintiffs claims that defendants failed to limit the scope of the eviction under a theory of agency. Count VIII on behalf of Campbell states a claim for breach of fiduciary duty against the Association, the Board and the individual defendants, Harris, as President of the Association, Herkert, as building manager for 1212 Lake Shore Drive, and Invsco, as building management. On August 21, 2001, this court dismissed the claims of plaintiff Campbell with prejudice for failure to comply with court-ordered discovery.

---

[2]Centigon, was a Delaware Corporation incorporated on December 26, 1978, and involuntarily dissolved on March 1, 1994, for non-payment of taxes. Centigon, Inc., the dissolved Delaware Corporation, has been misnamed "Centagon" in the filing of the Complaint. Hereinafter this court will refer to the plaintiff labeled as "Centagon" in the Complaint as the dissolved Delaware Corporation, Centigon, Inc. ("Centigon").

[3]Penderyn, was a Delaware Corporation originally incorporated under the name "Streets Above, Inc." on March 8, 1989, and involuntarily dissolved for non-payment of taxes on March 1, 1995.

2

In addition to dismissing the claims of Campbell, this court struck her pleadings in their entirety and barred her testimony at trial pursuant to Federal Rule of Civil Procedure 37. Accordingly, Counts III, V, and VIII of the complaint have all been dismissed with prejudice leaving Counts I, II, IV, VI, and VII to be reviewed on this motion for summary judgment.

## STATEMENT OF FACTS[4]

On October 14, 1982, Dana entered into a contract for the purchase of the Unit for $500,000. At some point in time, prior to January 1992, Dana sold the Unit to Campbell by transferring 100% of her beneficial interest in a land trust to Campbell. The transfer included the Unit as well as some personal property in the Unit. At the time of the transfer, the Unit was furnished and pieces of personal property were added to the Unit over the course of years. As a result of the transfer, Campbell was the equitable and beneficial owner of the Unit and the Cole Taylor Bank was the Trustee of the Land Trust. In addition, Campbell became responsible for the payment of Association dues, real estate taxes, and assessments in connection with the Unit. Once Dana transferred the Unit to Campbell, Dana did not move any personal property out of the Unit. Campbell, however, in a separated oral agreement, did allowed Dana to continue to use the Unit for entertainment and business purposes. Dana did not pay Campbell any rent in exchange for her right to use the Unit on a limited basis. Ultimately, as early as January 1992, Dana informed the property manager of the 1212 Condominium building of the transfer of ownership and in March 1992, Dana informed Herkert, the building's manager at that time, that Dana was no longer liable for the assessments on the Unit which had accrued since December 1991 through March 1992 since she, Dana, was no

---

[4]The following facts are undisputed and are taken from the defendants' and plaintiffs' submissions pursuant to Local Rules 56.1(a) and (b).

longer owner of the Unit.

On May 7, 1991, Dana filed with the United States Bankruptcy Court for the Southern District of New York a voluntary declaration of bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code. Pursuant to her sworn bankruptcy petition, Dana stated that as of August 30, 1991, Dana had no ownership interest in the Unit and Dana did not owned any personal property located in the Unit. On April 29, 1992, the United States District Court for the District of Connecticut set aside and declared null and void a 1987 transfer of property between Dana and Connaught, Properties, Inc. as a fraudulent conveyance in an attempt to defraud her creditors. See Chemical Bank v. Dana, 234 B.R. 585, 594 (D.Conn. 1999)(quoting the findings of an order entered in the case of Banque Paribas v. Jeanne-Marie Dana, a/k/a Jeanne Peters, a/k/a J. Martin Dana, a/k/a Patricia Delafield, and a/k/a Mrs. Ashton Sloane and Connaught Properties, Inc., 755 F.Supp. 523 (D.Conn. 1990)). On March 31, 1999, the District Court of for the District of Connecticut entered a second judgment against Dana setting aside a July 1992 transfer of property from Dana to Connaught Properties, Inc. The Court held that this 1992 conveyance was also fraudulent and yet another attempt to defeat creditors. See Chemical Bank v. Dana, 234 B.R. 585, 592-5 (D.Conn. 1999).

In 1997, a dispute arose between Campbell and the Association with respect to an unpaid assessment of approximately $4,000. To resolve the dispute, the Association, acting through its Board, filed an action against Campbell and the land trust in the Circuit Court of Cook County, Illinois. On June 9, 1997, judgment was entered in favor of the Association and the Association was granted the right to exclusive possession of the Unit pursuant to 735 ILCS 5/9-111. In November 1997, the Association placed the judgment for possession of the Unit with the Sheriff of Cook

County for enforcement. The Sheriff's office scheduled the eviction for February 25, 1998. On February 25, 1998, the Sheriff with the aid of a moving company hired by the Sheriff removed the personal property located in the Unit and placed the personal property onto the street curb and sidewalk. Exclusive of certain fixtures and the contents of the storage locker for the Unit, the entire contents of the Unit was removed during the eviction. The remaining fixtures and items which remained in the storage locker were later returned and received by attorney John Giazzon, of the law firm of Chapman & Cutler on behalf of Valerie Campbell.

Immediately prior to the February 25, 1998, eviction, the Unit contained furniture and other items of personal property which Dana identified and listed from reviewing photographs of her Unit as it was in the 1980's and from memory. Dana identified the following furnishings as antiques that were in the Unit at the time of time of the eviction: (1) an eighteenth-century red lacquer commode; (2) Yen Yen porcelain vase; (3) half of a set of Flor Danica china; and (4) an antique pine desk. Other than these items, Dana did not specifically identify any additional personal property which had been purchased by her after 1990 which was located in the Unit at the time of the eviction.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether

there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

I.  Conflict of Laws

In diversity jurisdiction, a district court applies the substantive law of the forum state, including the rules governing the choice of law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This court therefore applies the choice of law rules set forth in the Restatement (Second) of Conflicts of Law which Illinois has adopted. Ingersoll v. Klein, 46 Ill.2d 42, 262 N.E.2d 593, 595 (1970); Suzik v. Sea-Land Corp., 89 F.3d 345, 348 (7th Cir.1996). The Second Restatement requires that a court apply the substantive law of the state with the most significant relationship to the torts at issue. Id. In this case, however, no party has raised a conflict of laws issue, therefore, the governing law is that of the forum state, Illinois. Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir.1992).

In deciding which body of law governs the actions of a corporation, however, the established rule provides that "[t]he corporate law of the state of incorporation is controlling with respect to the fiduciary duties of its directors as well as other internal corporate affairs." Treco, Inc. v. Land of Lincoln Sav. and Loan, 749 F.2d 374, 377 (7th Cir.1984). The internal affairs doctrine is a conflict

of laws principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs-- matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders. See Edgar v. MITE Corp., 457 U.S. 624, 645, 102 S.Ct. 2629, 2642 (1982). Again, no party has raised this issue regarding this motion for summary judgment, therefore, where the internal affairs of a corporation are concerned the law of the state of incorporation will govern.

II.     The Merits of the Motion for Summary Judgment

Defendants argue that their motion for summary judgment should be granted in their favor and against plaintiffs for the following reasons: (1) plaintiffs Centigon and Penderyn lack standing to bring this lawsuit; (2) plaintiff Dana has failed to prove that she has any ownership interest in personal property left behind in the Unit; (3) there is no duty in the State of Illinois for a landlord to care for a tenant's personal property left in a premises following an eviction proceeding; (4) plaintiffs have failed to raise a genuine issue of material fact as to a prima facie case of bailment under Illinois law; (5) the Sheriffs were acting as agents of the State of Illinois and not agents of defendants in executing the eviction of the Unit. This court will address each of these arguments in turn.

A.      The Corporations Centigon and Penderyn Lack Standing to bring this Lawsuit

The initial question before this court as to the two corporate plaintiffs is whether a Delaware corporation, which has been involuntarily dissolved, continues to exist for the purposes of commencing a civil action? This question is one of corporate capacity and must be determined by the law of Delaware, the corporate domicile of both Centigon and Penderyn. This suit was initiated on February 24, 2000, and it is undisputed that on that date Centigon had been dissolved for over five years and Penderyn had been dissolved for over four years for non-payment of taxes. Section 278

7

of the Delaware Code provides:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized.

Defendants argue both Centigon and Penderyn lack standing to sue in Illinois because the three year restriction contained in § 278 of Delaware Code represents a ban on all corporate activity after three years of dissolution unless authorized by the Delaware Court of Chancery. Plaintiffs cite to Wax v. Riverview Cemetery Co., 41 Del. 424, 437, 24 A.2d 431, 436 (Del. Super. Ct. 1942) for the proposition that if a dissolved corporation has a statutory right to be reinstated, then a proclamation of forfeiture for non-payment of taxes does no more than forfeit the corporate right to do business, but does not extinguish the corporation as a legal entity. Plaintiffs also cite to Sanders v. Vari, 143 A.2d 275 (Del. Ch. 1958) where the Delaware Court of Chancery held that proceedings to collect unpaid taxes on land in question were properly brought against a corporation which held title to such land, even though the corporation's charter had been declared void for non- payment of franchise taxes more than three years previous. Plaintiffs maintain that if a corporation maintains its legal identity after involuntary dissolution and can be sued outside the three year period set out in §278, it is axiomatic that such a dissolved corporation can bring suit beyond the three year period.

It is clear from Delaware law that § 278 represents a legislative policy declaring that all suits by dissolved corporations must be commenced within three years after dissolution and prohibits the commencement of actions by or against dissolved corporations more than three years after their

8

dissolution. See Smith-Johnson S. S. Corp. v. U. S., 231 F.Supp. 184, 186 (D. Del 1964). The facts and holdings of Wax and Sanders can be distinguished from this case because those cases involved suits initiated by a creditor having no interest in the dissolved corporation. Even though §278 of the Delaware Code is explicit on limiting the rights of dissolved corporations, §278 does not seem to be intended to penalize or destroy the rights of a dissolved corporation's creditor. See Wax, 24 A.2d at 436. Therefore under Wax and Sanders, a dissolved corporation may be a proper defendant because both Wax and Sanders actually stand for the proposition that a dissolved corporation can still serve as repository of title and as obligor of a debt despite dissolution for more than three years. 24 A.2d at 436; 143 A.2d at 277.

In this case, however, the dissolved corporations are plaintiffs and §278 is explicit in its mandate limiting the rights and activities of dissolved corporations. To allow Centigon and Penderyn to continue this suit would be to render §278 of the Delaware Code meaningless. Accordingly, this court holds that Centigon and Penderyn lack capacity to prosecute this case. Summary judgment in favor of defendants as to Count I and Count II of the Complaint is necessary as a matter of law.

B. Dana Lacks Capacity to Claim Damages for Personal Property Removed During the Eviction from the Unit

In this case, there is insufficient evidence in the record demonstrating that Dana owned any personal property removed from the Unit during the eviction. It is undisputed that Dana transferred the Unit to Campbell during the early 1990's. It is also undisputed that Dana sold or transferred some of the personal property located in the Unit at the time to Dana and that Dana never moved any personal property from the Unit after the transfer. Finally, it is undisputed that Dana admitted in her

Bankruptcy Petition that as of August 30, 1991, she had no ownership interest in the Unit and that she had no ownership interest in any personal property located in the Unit.

While it is true that bankruptcy schedules are often prepared in haste without much thought being given to the values reflected therein and the possible consequences of such statements of value, Dana's statements in her bankruptcy proceedings are admissions by a party-opponent. It is well-established in this circuit that the pleadings in one proceeding are admissible and cognizable as an admission in another. Walaschek & Associates, Inc. v. Crow, 733 F.2d 51, 54 (7th Cir. 1984). Despite the factual assertions contained in these admissions, Dana's admissions are not entirely conclusive to the truth of matters stated in Dana's bankruptcy petition. Dana's admissions under Federal Rule of Evidence 801(d)(2) can be overcome by competent evidence offered by the Dana. In review of the record in this case, however, Dana has failed to adduce any evidence competent or otherwise which rebuts her admissions in her bankruptcy petition. Furthermore, Dana has not offered any evidence into the record by which a reasonable finder of fact could conclude that Dana added any pieces of personal property to the Unit after August 30, 1991. As a result, Dana has failed to establish a genuine issue of material fact that she held any property interests in the personal property left behind in the Unit. Summary judgment in favor of the defendants as to Count IV of the Complaint is necessary as a matter of law.

C. The Duty of a Landlord to Care for a Tenant's Personal Property Left in a Premises following an Eviction Proceeding in the State of Illinois

It is a fundamental principle of tort law that a wrongdoer must owe a duty of care to an injured party before the law will permit redress against the wrongdoer for a claimed wrong. Kotarba v. Jamrozik, 283 Ill.App.3d 595, 597, 669 N.E.2d 1185, 1187 (1st Dist. 1996). The source of this duty

can be found in statutes and judicial decisions or created by contract. 283 Ill.App.3d at 597, 669 N.E.2d at 1188; Melchers v. Total Elec. Const., 311 Ill.App.3d 224, 228, 723 N.E.2d 815, 818 (1st Dist. 1999). Plaintiffs argue defendants owed duties to plaintiffs, during and after the eviction, to take reasonable steps to preserve and to safeguard what defendants should have known to be valuable personal property left behind in the Unit. This issue of whether there is an affirmative duty placed upon a landlord or a condominium association to care for a tenant's or owner's personal property left behind in a premises during an eviction proceeding is one of first impression in the State of Illinois. As such, the Illinois courts are the best place to determine whether such a duty exists. Upon a complete review of the facts in this case and considering the facts in a light most favorable to plaintiffs, this court finds that the facts of this case are insufficient to impose an affirmative duty upon defendants to care for any personal property left in the Unit after the eviction. Furthermore, this court finds that plaintiffs have failed to present sufficient evidence in the record to establish a genuine issue of material fact that defendants breached any affirmative duty defendants may have had or that any breach by defendants caused any damage to plaintiffs. Accordingly, summary judgment as to Counts I, II, and IV must be granted in favor of defendants as a matter of law.

Generally in Illinois, a landlord's exclusive remedy for evicting a person occupying property without right is the Forcible Entry Act. 2001 Ill. Comp. Stat. Ann. 735 5/9-101; City of Quincy v. Daniels, 246 Ill.App.3d 792, 796, 615 N.E.2d 839, 842 (4th Dist. 1993). This court is unaware and plaintiffs have not cited to any statutory provisions in Illinois, defining the procedures for the sheriff or others to follow in actually taking possession of a premises from a tenant and returning it to the landlord. Specifically, there are no statutory procedures in Illinois which govern the removal of a

tenant's personal property during the eviction process. Other jurisdictions, however, have addressed this issue and have been hesitant to impose a duty of care on a landlord. See Christensen v. Hoover, 643 P.2d 525, 528 (Colo.1982)(holding curbside drop of tenant's property permissible even though theft will likely result); McCready v. Booth, 398 So.2d 1000, 1001 (Fla.Dist.Ct.App.1981) (stating landlord had no duty to store or maintain tenants property where sheriff removed tenants possessions and placed them on the street following valid eviction); Banks v. Korman Assoc., 218 N.J.Super. 370, 527 A.2d 933, 934 (N.J.Super.Ct.App.Div.1987) (providing when tenancy is terminated by lawful eviction, landlord has no duty to care for property former tenant has left behind); Campos v. Investment Management Properties, Inc., 917 S.W.2d 351, 354 (Tex.Ct.App.1996) (landlord did not convert tenants property and was not negligent by removing it and placing it on the front lawn of the building). Ultimately, in deciding whether to impose any duty from which tort liability my follow, Illinois courts consider (1) how foreseeable was the plaintiff's injury, (2) the likelihood of the occurrence, (3) the magnitude of the burden of guarding against it, and (4) the consequences of placing that burden on the defendant. Doe v. McKay, 183 Ill.2d 272, 278, 700 N.E.2d 1018 (1998).

In response to this motion for summary judgment, plaintiffs have simply concluded that defendants owed them an affirmative duty and have not presented sufficient evidence in the record to create an issue of material fact that plaintiffs' alleged injury was foreseeable, that there was a high likelihood that plaintiffs' injury would occur, that there would not be a heavy burden on defendants to impose such a duty or illustrating the consequences of placing such a duty on defendants. Plaintiffs simply argue that defendants owed them a duty because defendants were present at and observed the eviction. These facts alone are insufficient for this court to impose an affirmative duty on defendants from which tort liability may follow.

In addition, plaintiffs have failed to provide sufficient evidence in the record to create a genuine issue of material fact as to causation. In Illinois, liability for ordinary negligence attaches where the plaintiff proves duty, breach, injury, and causation. Peretz v. Fidelity Container Corp., 682 N.E.2d 1150, 1157 (1st Dist.1997). Specifically, plaintiffs have not presented any facts demonstrating how the Sheriff's actions in removing plaintiffs' personal property did not break the chain of causation between defendants' alleged breach of duty and plaintiffs' alleged injury. In other words, plaintiffs have not shown how defendants alleged breach of their alleged duty caused any injury to plaintiffs since it is undisputed in that case that it was the Sheriff who removed the personal property from the Unit.

D. Prima Facie Case of Bailment

"A bailment is the delivery of property for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims it." American Ambassador Casualty Co. v. the City of Chicago, 205 Ill.App.3d 879, 881, 150 Ill.Dec. 755, 757, 563 N.E.2d 882, 884 (1st Dist. 1990). In order to recover under a bailment theory, plaintiffs must allege: (1) an express or implied agreement to create a bailment; (2) delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's re-delivery of the property in a damaged condition. American Ambassador Casualty, 205 Ill.App.3d at 881, 150 Ill.Dec. at 757, 563 N.E.2d at 884. Plaintiffs argue that defendants exercised control over the Unit after the eviction when the Association changed the locks on the Unit and posted a "No Trespassing" sign outside of the Unit. Plaintiffs conclude that given these alleged facts an implied bailment was created.

13

A constructive bailment, or a bailment implied in law, may be found where the property of one person is voluntarily received by another for some purpose other than that of obtaining ownership. American Ambassador Cas. Co. v. City of Chicago, 205 Ill.App.3d at 882, 563 N.E.2d at 885. In such cases, the law implies a contract for the keeping of the property until it shall be restored to the owner or his agent, and the contract implied is that of a depositary. Id. Plaintiffs have failed to create an issue of fact that an implied bailment existed in this case because there is no evidence in the record that defendants voluntarily exercised control over or even came into contact plaintiffs' personal property during the eviction. The evidence in this case establishes that the Sheriff of Cook County, Illinois enforced a judgment to enter the Unit and remove the personal property found in the Unit, and that Sheriff with the aid of a moving company hired by the Sheriff removed personal property located in the Unit to the street curb and sidewalk. Plaintiffs have failed to created an issue of fact that the Sheriff in executing the judgment tendered possession of any personal property belonging to plaintiffs to defendants.

Notwithstanding the non-existence of an express or implied agreement and notwithstanding the paucity of evidence establishing that defendants took possession of any of plaintiffs' personal property, plaintiffs have failed to present evidence in the record to establish the condition of the personal property left behind in the Unit prior to the February 25, 1998, eviction. The only evidence concerning the personal property left behind in the Unit comes from the a list created by Dana from reviewing photographs of the Unit taken in the 1980's and from Dana's own memory. Accepting this list of personal property left behind as true for purposes of this motion for summary judgment, there is absolutely no evidence which establishes the condition of any of the personal property left behind. In Illinois, the ordinary measure of damages for personal property is the fair market value

14

at the time of the loss. <u>Jankoski v. Preiser Animal Hosp., Ltd.</u>, 157 Ill.App.3d 818, 820, 510 N.E.2d 1084, 1086 (1st Dist. 1987). Without evidence of the condition of the personal property it is extremely difficult to establish the fair market value of the personal property at the time of the alleged loss.

In this case, the only evidence of fair market value in the record, is Dana's own self-interested statements as to the value of the property she listed as being in the Unit from her memory and photographs and an appraisal made by Ms. Pamela Bardo. Ms. Bardo stated that the fair market value of the personal property left behind in the Unit is $152,053.00. Ms. Bardo made this appraisal relying on photographs and paper documents produced by plaintiffs and the transcript deposition of Dana. Ms. Bardo, however, has not been properly tendered as an expert witness in this case and Ms. Bardo's appraisal does not comply with the mandates of Federal Rule of Civil Procedure 26(a)(2). Nonetheless, accepting this evidence as true to the value of the personal property left behind, the lack of testimony concerning the condition of the property at the time of loss is fatal to plaintiffs' claim of damages. Summary judgment as to Count VI of the Complaint in favor of defendants is necessary as a matter of law.

E. <u>Duty to limit scope of eviction - Agency</u>

Count VII of the Complaint alleges that defendants engaged the Sheriff of Cook County as its agent to carry out the eviction of the Unit and that defendants failed to limit the Sheriff to the permissible scope of the Sheriff's agency and caused or permitted the Sheriff to remove plaintiffs' personal property from the Unit without legal cause. The question here is whether the Sheriff was acting as an agent of defendant while executing an order entered by the Circuit Court of Cook County. The Illinois Constitution specifically designates sheriffs as county officers, <u>See</u> Illinois

Constitution Article VII, Section 4(c), and as county officers county sheriffs and their deputies act as agents of the State when, as in this case, they act to enforce orders issued by Illinois Courts. Illinois County Sheriffs have no discretion in executing court orders, they have a statutory duty to serve and execute all orders and judgments of every description that may legally be directed or delivered to them. See 55 ILCS 5/3-6019. Thus, allegations that the Sheriff was acting as an agent of defendants are meritless and summary judgment in favor of defendants as to Count VII of the complaint must be granted as a matter of law.

## CONCLUSION

For the above stated reasons, the defendants' motion for summary judgment is GRANTED. This case is dismissed in its entirety with prejudice. All pending motions are moot. All previously scheduled dates are stricken.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: November 20, 2001