Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1110 | **DATE** | 3/4/2002 |
| **CASE TITLE** | colspan="3" | Centagon, Inc., *et al.* vs. Board of Directors of 1212 Lake Shore Drive Condo. Assoc., *et al.* |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendants' motion for sanctions [doc. # 53-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 0 5 2002 date docketed | 68 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JJK | courtroom deputy's initials | Date/time received in central Clerk's Office | 3/4/2002 date mailed notice JJK mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CENTAGON, INC., PENDERYN, LTD., )
VALERIE CAMPBELL, AND JEANNE )
MARIE DANA, )
    )
        Plaintiffs, )
    )   No. 00 C 1110
vs. )   Judge Holderman
    )   Magistrate Judge Schenkier
BOARD OF DIRECTORS OF 1212 LAKE )
SHORE DRIVE CONDOMINIUM )
ASSOCIATION, *et al.*, )
    )   DOCKETED
        Defendants. )
    )   MAR 05 2002

## MEMORANDUM OPINION AND ORDER

The defendants – Board of Directors of 1212 Lake Shore Drive Condominium Association, Judy Harris and Invsco Management Company, Inc. – have filed a motion for discovery sanctions against plaintiff, Jeanne Marie Dana ("plaintiff"), pursuant to Fed. R.Civ.P. 37 (doc. # 53-1). The motion has been referred to this Court for disposition (doc. # 54-1). For the reasons discussed below, defendants' motion is denied.

### I.

We begin with a brief recitation of the relevant facts and the procedural history of this case. The plaintiffs filed a complaint on February 24, 2000, seeking damages allegedly incurred as a result of the enforcement of an eviction order entered in the action titled *Board of Directors 1212 Lake Shore Drive Condominium Assoc. v. Valerie Campbell, et al.*, Case No. 97 M1 11059 (Cir. Ct. of Cook County, Illinois) (the "Eviction Action"). The complaint alleged that each plaintiff was the owner of art works, furnishings and office equipment located in Unit 34 B-S, 1212 Lake Shore



Drive, Chicago, Illinois ("Unit 34 B-S"). The plaintiffs claimed that, as a result of the eviction action, they had lost property valued in excess of $800,000.

On February 2, 2001, the district judge denied defendants' motion to dismiss (doc. # 19-1). The parties thereafter engaged in the discovery, a process that – as we shall see below – was not free from conflict. Because Ms. Dana does not specifically challenge the factual chronology of the discovery history that is offered by the defendants, we summarize those facts emphasized by the defendants here.

On April 5, 2001, the defendants served interrogatories and document requests on plaintiffs seeking information relevant to the ownership and value of the lost property. The plaintiffs responded on or about June 7, 2001. In that response, the plaintiffs provided photographs of some, but not all, of the personal property which they claimed was lost or stolen, as well as a partial list of the property for which they claimed ownership. The plaintiffs, however, did not disclose any information which would establish who owned any of the personal property.

Following a motion to compel her deposition, which the district judge granted (doc. # 26-1), Ms. Dana appeared for deposition on June 26 and June 27, 2001. At the June 26, 2001 deposition session, defendants learned that Ms. Dana possessed inventory lists of the lost property, with partial notations of value, that had never been produced. Apparently, Ms. Dana initially took the position that these inventory lists might be privileged; however, Ms. Dana eventually agreed to produce them.

During the deposition, Ms. Dana was asked a series of questions seeking to uncover information about whether she had been involved in other lawsuits. Ms. Dana's answers were unilluminating, to say the least. When asked whether she had been a party to a lawsuit within the previous ten years, Ms. Dana stated that "I don't recall the specifics," but then added that "it seems

like these days, you're always involved in some form of litigation" (Defs.' Mem., Ex. B at 12). Ms. Dana further testified that she did not know how many such suits she had been involved in or where they were filed (*Id.*, at 12-13). And, in response to a direct question as to whether she ever had any judgments entered against her, Ms. Dana stated that "I don't recall right now. I don't think so" (*Id.*, at 13).

Suspicious of these and other answers by Ms. Dana, defendants then embarked on what they have called an "independent investigation." In short order, that investigation led to the discovery "that in addition to two multi-million dollar lawsuits – one of which had resulted in a multi-million dollar judgment against Dana only months before her sworn deposition testimony – Dana had also filed a personal bankruptcy petition listing her personal property and assets" (Defs.' Mem. at 5).

The bankruptcy petition, filed in 1991, turned out to be very significant. In that petition, Ms. Dana, under penalty of perjury, did not claim any ownership interest in any of the personal property located in Unit 34 B-S (*see* Defs.' Mem., Ex. C). And, in two separate lawsuits by creditors alleging that Ms. Dana had fraudulently transferred her property, those creditors obtained two separate judgments against Ms. Dana (Defs.' Mem. at 5). In each of these cases, there were documents that referred or related to Ms. Dana's ownership (or lack thereof) in the personal property at issue in this case (*Id.*). Prior to defendants' investigation, Ms. Dana did not disclose, during oral or written discovery, the existence of her 1991 bankruptcy or the other two lawsuits (*Id.*).

On July 19, 2001, following defendants' second motion to compel discovery (doc. ## 29-1, 30-1), the district judge ordered the continuation of Ms. Dana's deposition, both personally and in her capacity as a Rule 30(b)(6) witness for plaintiffs Centagon, Inc. and Penderyn, Ltd. (doc. ## 28-1, 31-1). However, that district judge denied defendants' request for sanctions, a request that had

3

been premised in part on Ms. Dana's failure to disclose in discovery the bankruptcy petition and prior lawsuits (*see* 07/17/01 Revised Motion to Compel (doc. # 29-1, at ¶¶ 14-28 and prayer for relief).

During Ms. Dana's continued deposition on July 25-26, 2001, defendants confronted her with the bankruptcy petition and the two lawsuits. Ms. Dana admitted the existence of the bankruptcy petition, as well as the fact that the petition did not list any claim of ownership in the property she sought damages for in this case; Ms. Dana also admitted the existence of one of the judgments but not the other, claiming "privilege on advice of counsel" (Defs.' Mem. at 6). According to defendants, Ms. Dana also was not willing or able to answer the questions posed to her in her Rule 30(b)(6) capacity since she was "<u>not</u> the most knowledgeable witness" for the two plaintiff corporations, nor did she have much, "if any, knowledge about these two corporate plaintiffs" (*Id.*) (emphasis in original). However, defendants never filed a motion seeking to compel the corporations to produce a more knowledgeable Rule 30(b)(6) witness; nor have defendants in this motion identified the significance of the Rule 30(b)(6) testimony they sought but that Ms. Dana allegedly was unable to provide.

Discovery in the case closed on August 31, 2001 (doc. # 26-1). Thereafter, defendants moved for summary judgment (doc. #37-1), and after full briefing (doc. ## 45-1 through 50-1), on November 20, 2001, the district judge granted summary judgment for the defendants on all claims and terminated the case (doc. ## 51-1, 52-1).[1]

---

[1]Prior to the entry of summary judgment, the district judge already had dismissed plaintiff Campbell as a discovery sanction (doc. # 34-1), and awarded fees and costs against Ms. Campbell in the amount of $3,950.37 (doc. #44-1). Moreover, while Centagon and Penderyn remained in the case at the time of summary judgment, years earlier both corporations had been involuntarily dissolved due to non-payment of taxes (*see* 11/20/01 Mem. Op. at 2 nn. 2-3).

4

In the opinion granting summary judgment, the district judge specifically found as material to the resolution of Ms. Dana's claim for damages to personal property the fact that Ms. Dana had filed for Chapter 11 (personal) bankruptcy in 1991, and had "admitted in her Bankruptcy Petition that as of August 30, 1991, she had no ownership interest in the Unit and that she had no ownership interest in any personal property located in the Unit" (11/20/01 Mem. Op. at 9-10). The district judge found that Ms. Dana's statements in the bankruptcy petition were "admissions by a party-opponent" that were admissible in this case (*Id.* at 10). Because Ms. Dana did not offer any evidence to rebut this admission, the district judge found that "Dana ha[d] failed to establish a genuine issue of material fact that she held any property interests in the personal property left behind in the Unit" (*Id.*). The district judge further found it "undisputed that Ms. Dana transferred the Unit to Ms. Campbell during the early 1990's"; that she "sold or transferred some of the personal property located in the Unit" at that time; and that she "never moved any personal property from the Unit after the transfer" (*Id.* at 9). Consequently, the district judge concluded that Ms. Dana lacked capacity/standing to bring her damage claim against defendants (*Id.* at 10).

## II.

On December 5, 2001 – more than two weeks after final judgment was entered – the defendants filed the present motion for sanctions pursuant to Rule 37. In their motion, the defendants claim that they "attempted to obtain discovery pertaining to the plaintiffs' claims of ownership and/or value of the lost property" but that plaintiffs made no voluntary disclosure pursuant to Rule 26(a)(1), and failed to provide any information in response to written or oral discovery requests (Defs.' Mem. at 2-4). According to defendants, Ms. Dana failed to disclose the bankruptcy petition and the judgments entered against her in other lawsuits even though the defendants

specifically questioned Ms. Dana about this subject in her June 25-26, 2001 deposition – a deposition that the district judge ordered Ms. Dana to attend after the defendants successfully brought and argued a motion to compel such testimony (*Id.* at 4). Defendants argue that they improperly were put to the cost of an "independent investigation" to uncover the bankruptcy and other judgments related to fraudulent transfer of the property located in Unit 34B-S (*Id.* at 4-5).

Moreover, defendants argue that even after successfully compelling the continued deposition of Ms. Dana, on July 25-26, 2001, personally and as a 30(b)(6) representative for Centagon, Inc. and Penderyn, Ltd., Ms. Dana's oral testimony was unsatisfactory: although she admitted, when confronted with her bankruptcy petition, that the petition did not list any claim of ownership for the 1212 Lake Shore Drive condominium unit 34B-S or for any personal property in that unit, she would not admit to one of the judgments that had been entered against her (*Id.* at 6). Finally, the defendants complain that Ms. Dana appointed herself as the Rule 30(b)(6) deponent for both Centagon and Penderyn but that she "was not the most knowledgeable witness with respect to either of the two corporate plaintiffs" and that she "had very little, if any, knowledge about" them (*Id.* (emphasis in original)). Defendants seek an order awarding $52,278.00 as a discovery sanction for this conduct (Defs.' Mem. at 10). Defendants state that this figure represents about one-fourth of the total fees and costs incurred in the case (*Id.* at 10 and Ex. D; Defs.' Reply at 10-12).

Plaintiffs resist this motion on two grounds; *first*, they argue that a Rule 37 motion filed first after judgment is untimely, and for that reason alone should be denied (Pls.' Mem. at 4-6); and *second*, that in any event Ms. Dana engaged in no conduct that is sanctionable under Rule 37 (*Id.*, at 6-14). For the reasons set forth below, we find the timeliness point dispositive here.

6

## III.

Rule 37 addresses disputes in the discovery process, and is designed to be used by litigants in several circumstances. *First,* Rules 37(a) allow a party to bring a motion to compel a response to a discovery request where none has been made (or where the response is so inadequate that it is tantamount to no response at all). The relief available under Rule 37(a) is specifically limited to an order compelling discovery, and an award of those fees directly incurred in bringing or defending against the motion. *Second,* Rule 37(b) allows for sanctions when a party fails to comply with a specific order or direction compelling specific discovery. The available sanctions under Rule 37(b) are more varied than those available under Rule 37(a), and include barring witnesses or evidence; barring litigation of certain claims or defenses; designating certain facts as proven; entering a dismissal or default judgment; issuing a finding of contempt; and awarding fees and costs incurred as a result of disobeying the order (*see* Rule 37(b)(2)). *Third,* Rule 37(c) authorizes sanctions for failing to make initial disclosures required under Rule 26(a). Those sanctions include barring the presentation of undisclosed witnesses or documents at trial; informing the jury about the lack of such disclosures; imposing sanctions available under Rule 37(b)(2) (other than contempt); and awarding fees and costs resulting from the failure to disclose. *Fourth,* Rule 37(d) allows a party to seek sanctions broader than those available under Rule 37(a) for failure to appear at a deposition or to respond to interrogatories or a document request. The available sanctions include all of those available under Rule 37(b)(2) – except an order of contempt. And, *fifth,* Rule 37(a) allows a party to seek attorneys' fees and costs resulting from a failure of the opposing side to participate in discovery planning as required by Rule 26(f).

Read together, these array of Rule 37 sanctions are intended, first and foremost, to try to ensure that the discovery process works properly and that legitimate discovery materials that are sought are produced, and second, to eliminate the trial prejudice that otherwise might result if a requesting party's legitimate discovery requests were disregarded. The fundamental purpose of Rule 37 is to ensure that the merits of the case can be addressed at trial (or on summary judgment), without any party suffering prejudice as a result of nonfeasance or malfeasance during discovery. This purpose would be undermined by allowing a party to sit on a discovery issue until after judgment, and then to seek money sanctions only after the case is over – and when no other Rule 37 remedies are available.

Thus, at the outset, it seems fair to observe that the present motion – filed well after the close of discovery (July 31, 2001), and several weeks after final judgment was entered (November 20, 2001) – is untimely, to say the least. There is Seventh Circuit case law directly supporting this conclusion. *See Popeil Bros. Inc. v. Schick Elec., Inc.*, 516 F.2d 772, 778 (7th Cir. 1975) ("Rule 37(c) expenses and fees *must be **timely** sought prior to **judgment** and appeal*, and that if the *judgment* is silent in regard thereto, they are deemed waived or denied") (emphasis added); *see also Butler v. Pettigrew*, 409 F.2d 1205, 1207 (7th Cir. 1969) (Rule 37(b) motion presented after trial and entry of judgment held to be waived by "inaction"). Indeed, the Seventh Circuit has held that a Rule 37 motion may be untimely even if filed prior to judgment. *See Brandt v. Vulcan Inc.*, 30 F.3d 752, 756 (7th Cir. 1994) (affirmed finding by district judge that waiting until jury instruction conference to raise a Rule 37(b)(2) motion was waiting too long – even though "Rule 37(b)(2) does not establish any time limits within which a motion for sanctions must be filed . . . unreasonable delay may render such a motion untimely") (citing *Butler*).

This is the plaintiff's primary argument, and it is well-taken. *Popeil* and *Butler* are still good law, and provide a basis for denying defendants' motion based solely on timeliness grounds. Defendants do not address *Popeil* at all, and their attempt to distinguish *Butler* (Defs.' Reply at 7) is unconvincing. Moreover, the only two authorities cited by defendants fail to support their position that a post-judgment Rule 37 motion is timely. Defendants cite *Brandt*, 30 F.3d at 756-57 (Defs.' Reply at 10), which found untimely a *prejudgment* Rule 37 motion filed after the close of discovery during an instruction conference.[2] Defendants also cite *Tamari v. Buche & Co. (Lebanon)*, 729 F.2d 469, 472 (7th Cir. 1984) (Defs.' Reply at 7-8), a case which adds nothing here because it addressed only whether a Rule 37(b) motion may be filed only after a previous motion to compel discovery – the case did not involve a post-judgment motion.

Thus, we agree with plaintiffs that a Rule 37 motion for sanctions must be brought, if at all, prior to judgment, and that as a result, defendants' motion must be denied as untimely.

## IV.

In *Brandt*, the Seventh Circuit made clear that when a Rule 37 motion is filed prior to entry of judgment but after the close of discovery, whether the motion is timely is a matter committed to the trial judge's discretion. 30 F.2d at 756-57. Thus, even if post-judgment Rule 37 motions were not categorically barred as untimely, that would not open the door to post-judgment Rule 37 motions to be filed without limitation. In this case, defendants offer two justifications for the timing of their

---

[2]We recognize that in *Brandt*, the Seventh Circuit said that "Rule 37(b)(2) does not establish any time limits within which a motion for sanctions must be filed." 30 F.3d at 756. But there, the appeals court addressed a pre-judgment motion, and for that reason, we do not believe *Brandt* undermines the more absolute time rule set forth in *Popeil* with respect to a post-judgment motion.

9

motion. Assuming that there is discretion to allow a post-judgment Rule 37 motion, in this case the Court would exercise its discretion to find that defendants' motion comes too late.

## A.

The defendants argue that the timing of their motion is the direct result of the timing of plaintiffs' conduct. Defendants say that they "could not bring this Motion until . . . [the] Court ruled, as it did, that the information Dana sought to conceal was highly relevant in determining Dana's lack of ownership interest in the personal property which was claimed to have been lost or stolen" (Defs.' Reply at 2). In support of this theory, the defendants offer various explanations such as: "Dana waited until almost the last date of discovery . . . to submit herself for the completion of her deposition and for the two Rule 30(b)(6) depositions"; and "[i]t was not until her final deposition that defendants were able to question Dana about her personal bankruptcy schedules . . . ." (*Id.*) However, this argument does not withstand scrutiny.

*First,* defendants argue that plaintiffs failed to produce documents concerning the bankruptcy and the lawsuits in response to written discovery requests. Defendants then argue that at her first deposition in June 2001, Ms. Dana failed to provide forthcoming responses to questions concerning prior litigation. The Court's review of Ms. Dana's testimony on that subject shows that to characterize her responses as merely evasive would be charitable; some of the responses are susceptible of being interpreted as flat out lies. Apparently, defendants held that view at the time. That is why defendants undertook an "independent investigation," which uncovered evidence of the bankruptcy petition and the judgments.

But plaintiffs' written discovery responses were served on June 7, 2001 (Defs.' Mem., Ex. A), which still left nearly two months before the conclusion of non-expert discovery. And,

defendants had the information about Ms. Dana's bankruptcy and other lawsuits by the first half of July. This left them plenty of time to seek a Rule 37 order and sanctions concerning the written discovery responses and Ms. Dana's deposition if they so desired.

In fact, that is exactly what defendants did: after locating the information concerning the bankruptcy petition and the prior judgments, defendants promptly sought an order requiring Ms. Dana to sit for a continued deposition. In that motion, defendants specifically argued that Ms. Dana's written discovery disclosures and her deposition testimony were deficient because of the failure to disclose those matters, and sought sanctions against Ms. Dana "for her failure to disclose and produce relevant information requested" (07/17/01 Revised Motion to Compel at 5-6).[3] Defendants succeeded in getting an order compelling Ms. Dana's further deposition; but they failed in their effort to have the district judge impose sanctions. Thus, any deficiencies in Ms. Dana's written discovery responses and original deposition testimony were the subject of Rule 37 motion practice during discovery; we see no reason to revisit those matters now, after judgment, or to impose sanctions that the district judge did not impose at the time.

*Second*, while there is no dispute that Ms. Dana appeared for her continued deposition, defendants claim to be dissatisfied with Ms. Dana's further testimony concerning the bankruptcy petition and the prior judgments.[4] But if that was the case, then defendants were free to seek a

---

[3] In the motion, defendants also reported that Ms. Dana's deposition testimony showed that plaintiffs improperly had withheld certain documents concerning the value of alleged lost or stolen property on the ground of privilege, but that the parties had worked out that disagreement through "reasonable attempts to resolve the discovery dispute" (*Id.*, at ¶¶ 5-6). This further underscores why disputes concerning the adequacy of discovery are best addressed by the parties prior to judgment.

[4] Defendants also complain, albeit in a footnote, that Ms. Dana did not appear on July 24, 2001 at 9:30 a.m., as ordered, but rather on July 25, 2001 at 1:30 p.m. (Defs.' Reply. at 2, n.2). The defendants presumably agreed to the continuance since they did not seek any sanction at that time.

11

further order compelling responses or, instead, an order seeking one of the Rule 37(b)(2) sanctions – such as, for example, an order establishing certain facts as established. Had defendants sought such an order, it might have eased their path in obtaining summary judgment and allowed them to avoid some of the costs they claim to have incurred by reason of plaintiffs' conduct.

*Third*, Defendants also claim to be dissatisfied with Ms. Dana's answers as a Rule 30(b)(6) witness, on the ground that she "was not the most knowledgeable witness" nor did she have much, "if any, knowledge about these two corporate plaintiffs" (Defs.' Mem. at 6) (emphasis original). To the extent defendants claim a right to have a corporate party produce the "most knowledgeable" witness, they misread the rule, which contains no such requirement. Defendants are on firmer footing when they complain that Ms. Dana really knew nothing, because she was required by Rule 30(b)(6) to be able to testify to information "known or reasonably available to the corporation." But, if Ms. Dana was not prepared or able to meet that standard, defendants had a number of options they could have pursued at the time. For example, defendants could have sought a Rule 37(b)(2) order barring the corporation from offering evidence on the subjects on which Ms. Dana was unable to testify, or an order deeming certain facts established. If the Rule 30(b)(6) testimony was really important to them (which they do not argue in their current motion), defendants could have sought an order under Rule 37(a) compelling a knowledgeable Rule 30(b)(6) witness to testify. We are unpersuaded that the timing of Ms. Dana's responses justified defendants' delay.

*Fourth*, defendants argue that plaintiffs failed to provide information as required by the mandatory disclosure requirement of Rule 26(a)(1) (Defs.' Mem. at 2-3, n.2). At the threshold, this argument fails because defendants have offered nothing to convince the Court that the mandatory disclosure requirement applied in this case. This lawsuit was filed on February 24, 2000. Prior to

the December 1, 2000, amendment to Rule 26(a), the Northern District of Illinois was an "opt-out" district which did not require Rule 26(a)(1) disclosures, unless otherwise ordered. After December 1, 2000, the amendment to Rule 26(a) required such disclosures on a nationally uniform basis, unless otherwise ordered, for all cases filed after that date. However, for cases pending as of December 1, 2000, such as this case, the December 1, 2000 amendment only required application of Rule 26(a)(1) insofar as it was "just and practicable." The record does not disclose, nor do the parties point to, any order by the district court requiring Rule 26(a)(1) disclosures in this case. Thus, although Ms. Dana concedes that she did not make a Rule 26(a)(1) disclosure (Pls.' Resp. at 9), such disclosures were not required at the time this case was filed.[5] Accordingly, there can be no sanctions in any event under Rule 37(c).

Moreover, even if Rule 26(a)(1) disclosures had been required as amended in 2000, the rule only requires a party to disclose information that may be used to support a claim or defense; it does not require that a litigant provide the opposing party with evidence that would damage its case. There has been no showing by the defendants that Ms. Dana may have used her 1991 bankruptcy petition (disclaiming ownership of the subject property) or the judgments entered against her by former creditors (for fraudulent conveyance of the property to another to avoid their reach) to seek damages for this very property.

Finally, assuming that mandatory disclosure had been required, that would have occurred early in discovery. If dissatisfied with plaintiffs' (non)disclosure, defendants could have relied on the self-enforcing provision of Rule 37(c)(1) to preclude plaintiffs from using any information

---

[5]This fact seems reflected by plaintiffs' point that the defendants did not make Rule 26(a)(1) disclosures either (Pls.' Resp. at 9), a claim the defendants do not rebut in their reply brief.

13

improperly withheld, or could have filed a Rule 37(c)(1) motion seeking other relief. In either event, there is no reason that any complaint about plaintiffs' alleged non-compliance with Rule 26(a)(1) could not have been raised prior to judgment.

**B.**

Nor do we find merit in defendants' argument that they had to wait until after summary judgment was granted in order to file their motion, since it was the summary judgment ruling that established that the information from the bankruptcy petition was critical to the case (Defs.' Reply at 6). Nothing in Rule 37 sets forth, as a precondition to a motion based on failure to comply with Rules 30 (depositions), 33 (interrogatories) or 34 (documents), proof that the information improperly withheld is "critical" – or, for that matter, even admissible. Rule 26(b)(1) provides that a party is entitled to discover information "relevant to the claim or defense of any party," and that the information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

It should not have taken a summary judgment ruling to make it clear that the information concerning Ms. Dana's bankruptcy petitions and the judgements met this standard of discoverability – no one here has suggested otherwise. And, it should not have taken a summary judgment ruling to tell defendants that if they believed Ms. Dana had engaged in discovery abuse by stonewalling legitimate attempts to discover that information under the rules, Rule 37 provided a means to address that situation. The time to resort to Rule 37 was prior to judgment, when the district court would have had the opportunity to fashion orders that might have mitigated the effects of any abuse that

might have been found.[6] The defendants thus would do well to remember that "[i]n delays there lies no plenty." William Shakespeare, *Twelfth Night, II*, 42 (quoted in *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995).

## CONCLUSION

For the reasons set forth above, the Court denies defendants' motion for sanctions (doc. # 53-1).[7]

**ENTER:**

*/s/ Sidney I. Schenkier*
SIDNEY I. SCHENKIER
**United States Magistrate Judge**

DATE: March 4, 2001

---

[6] In this regard, we note that the district judge showed no reluctance in this case to act decisively to sanction misconduct when he found it to have occurred – witness the order dismissing Ms. Campbell as a party, striking her claims, and imposing monetary sanctions as a result of her conduct in discovery.

[7] Having found that the defendants' motion is untimely, we need not address the merits of whether there was a discovery violation or whether, if there was, the attorneys' fees sought are reasonable. However, on the question of fees, we make this observation: the defendants' number of $52,278, or twenty-five percent of the total attorneys' fees in this case, strikes the Court as unreasonable on its face. Defendants do not provide an explanation of how the discovery relating to Ms. Dana's bankruptcy and these prior judgments could reasonably represent so large a proportion of the fees in the case. The defendants have not even attempted to correlate the attorney and paralegal time allegedly spent tracking down, analyzing, and arguing the evidence that they claim Ms. Dana withheld from them in violation of Rule 37(a), (b) or (c). The defendants' Exhibit E, which purports to be fee summaries covering a four month period for five different attorneys or paralegals, lists work ranging from research on corporate standing issues, to work on an unrelated "motion to bar," to time spent preparing defendants' expert witnesses for deposition and reviewing the transcripts from such depositions.

15